IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


LISA M. HOLT,                        )
                                     )
            Plaintiff,               )
                                     )
     v.                              )       1:12CV1001
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of               )
Social Security,                     )
                                     )
            Defendant.               )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

     Plaintiff Lisa M. Holt ("Plaintiff") brought this action
pursuant to Section 205(g) of the Social Security Act (the
"Act"), as amended and codified at 42 U.S.C. § 405(g), to obtain
judicial review of a final decision of the Commissioner of
Social Security ("Commissioner"), denying Plaintiff's claim for
Disability Insurance Benefits under Title II of the Social
Security Act. Subsequently, Plaintiff filed a Motion for
Judgment on the Pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure (Doc. 10), and the Commissioner has
filed its own Motion for Judgment on the Pleadings (Doc. 15).

Additionally, the administrative record has been certified to this court for review.[1]

For the reasons set forth below, this court will grant Plaintiff's Motion for Judgment on the Pleadings and deny the Commissioner's Motion for Judgment on the Pleadings. This action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order pursuant to sentence six of 42 U.S.C. § 405(g) to permit the Commissioner to consider the post-hearing evidence presented by Plaintiff.[2,3]

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 7.)

[2] Sentence four of § 405(g) authorizes a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Sentence six of § 405(g) authorizes a district court to remand a case for "additional evidence to be taken before the Commissioner of Social Security," in limited circumstances. The basis for remand affects the time frame in which a prevailing plaintiff may seek attorney's fees under the Equal Access to Justice Act (EAJA) and the scope of the fees available.

## I.   PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on January 25, 2010, alleging a disability beginning on May 1, 2007. The claim was denied both initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on May 24, 2011 and, in a decision dated June 20, 2011, the ALJ denied Plaintiff's application. (Tr. at 45-53.) On July 25, 2012, the Appeals Council subsequently denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

---

[3] Courts can remand a case both on sentence four grounds and sentence six grounds. In <u>Jackson v. Chater</u>, the Eleventh Circuit held that a dual remand is permissible. With regard to the seeking of attorney's fees in a dual remand situation,

> We . . . hold that where the remand is pursuant to both provisions [sentence four and sentence six] and the claimant prevails at least in part for sentence-six reasons, he is entitled to reopen the case in the district court and have judgment entered there in his favor. The time for filing an EAJA application runs from that later date, instead of from the date on which the judgment remanding the matter was entered.

<u>Jackson v. Chater</u>, 99 F.3d 1086, 1090 (11th Cir. 1996).

The ALJ found that Plaintiff had the following severe impairments: splenic artery aneurysm, history of fusion back surgery, history of right elbow surgery, and depression with anxiety. (Id. at 47.) The ALJ also found that Plaintiff's impairments, alone or in combination, did not meet or equal a Listing impairment. (Id. at 48.)

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: only occasional climbing of stairs or ramps; can engage in occasional bending, balancing, stooping, crouching and crawling; can never climb ladders or ropes; should avoid hazardous machinery and occupations with vibrations; and can engage in work consisting of simple, routine, repetitive tasks. (Id. at 49.) The ALJ determined that Plaintiff was unable to perform any past relevant work but, that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy which she was capable of performing, including: cashier II, store rental clerk and cafeteria attendant. (Id. at 52—53, 92.) Thus, the ALJ determined that Plaintiff was not disabled. (Id. at 53.)

After unsuccessfully seeking review by the Appeals Council, Plaintiff filed the present action on September 6, 2012.

## II.  <u>LEGAL STANDARD</u>

Federal law authorizes judicial review of Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006).  However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]."  Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472.

In undertaking this limited review, the court notes that "[a] claimant for disability benefits bears the burden of proving a disability."  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Hancock, 667 F.3d at 472.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation

---

[4] As set out in Craig:

> The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical.

Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996).

and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's [RFC]."  Id. at 179.[5]  Step four then

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments."  Hines, 453 F.3d at 563.  In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[6]

## III. **ANALYSIS**

In the present action, Plaintiff contends that: (1) the ALJ did not properly consider all of her functional limitations (specifically, Plaintiff's (a) use of a cane and (b) persistent

_____

[6] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

nausea) when assessing Plaintiff's RFC, and therefore incorrectly determined Plaintiff's RFC; (2) the ALJ erred by not considering consultative examiner's ("CE") medical opinions; and (3) the ALJ's credibility analysis is not substantiated by the record. (Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings (Doc. 11) at 1, 4-6.)

## A.    Residual Functional Capacity (RFC)

Plaintiff asserts that the ALJ erred in determining her RFC, because the ALJ failed to take into account Plaintiff's use of a cane and her persistent nausea. Defendant argues that Plaintiff has failed to establish her use of a cane was medically necessary and, further, that her persistent nausea resulted in any functional limitations.

### 1.    Use of Cane

Appendix One of the Regulations states that "[t]he requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P, Appendix 1, § 1.00(J)(4). Thus, an ALJ is required to consider the impact of "medically required" hand-held assistive devices. Social Security Ruling 96–9p, Policy Interpretation Ruling Titles II and XVI: Determining

Capability to do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185 (July 2, 1996) ("SSR 96-9p"); see Wimbush v. Astrue, No. 4:10CV00036, 2011 WL 1743153, at *2-3 (W.D. Va. May 6, 2011).

There are instances in the medical record where it was noted that Plaintiff used a cane. (See, e.g., Tr. at 51.) Defendant contends that a physician's mere mention that a cane was used is insufficient to establish its medical necessity. (Def.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Def.'s Mem.") (Doc. 16) at 5-7.) While this may be true, Plaintiff testified that she began using a cane after falling several times, that she uses a cane to walk, and that she can only take a few steps without the cane. (Tr. at 83.) Additionally, Plaintiff was prescribed a walker following back surgery in July, 2009 (id. at 206), and was prescribed both a walker and a four-pronged cane in September, 2011.[7]  Although this later

---

[7] The later prescription (dated 9/12/2011), which was made after the ALJ's decision, was presented to the Appeals Council. (Tr. at 762.)

prescription post-dates the relevant time period, it is new

evidence that deserves consideration.[8]

Plaintiff's prescription for a cane is new evidence that is

enough to trigger remand. "The court may remand a case to the

Commissioner for a rehearing under . . . sentence six of 42

U.S.C. § 405(g)." <u>Sargent v. Sullivan</u>, 941 F.2d 1207 (4th Cir.

1991) (unpublished table decision). Sentence six allows that:

> The court may . . . at any time order additional
> evidence to be taken before the Commissioner of Social
> Security, but only upon a showing that there is new
> evidence which is material and that there is good
> cause for the failure to incorporate such evidence
> into the record in a prior proceeding.

<u>Koutrakos v. Colvin</u>, Civil Action No. 8:13-cv-00883-JMC, 2014 WL

4955184, at *8 (D.S.C. Sept. 26, 2014). "A reviewing court may

remand a Social Security case to the Secretary on the basis of

---

[8] <u>See</u> <u>Bird v. Comm'r of Soc. Sec.</u>, 699 F.3d 337, 345 (4th
Cir. 2012) (consideration of medical evidence outside of
relevant time period proper when such evidence may be
"reflective of a possible earlier and progressive
degeneration"). <u>See also</u> <u>Cox v. Heckler</u>, 770 F.2d 411, 413 (4th
Cir. 1985) (evidence should not be disregarded merely because an
evaluation occurred outside the relevant time period so long as
it may be relevant to prove a disability during the relevant
time period); <u>Kemp v. Astrue</u>, Civil Action No. 8:09-3318-JDA,
2011 WL 4434030, at *15 (D.S.C. Sept. 22, 2011) (noting that
evidence should not be disregarded merely because an evaluation
occurred outside the relevant time period so long as it may be
relevant to prove a disability during the relevant time period);
<u>Coulbourn v. Astrue</u>, No. CIV S-07-0095 GGH, 2008 WL 2413169, at
*4 (E.D. Cal. June 12, 2008) (stating that medical reports
created outside the relevant time period may be relevant when
there is no evidence that the condition had changed
significantly during the interim).

- 12 -

newly discovered evidence if . . . prerequisites are met."

Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[9]

The subsequent medical prescription for both a walker and a cane satisfies the requirements for consideration under sentence six. The evidence is new and could not have been presented earlier, because it had not occurred. The evidence is material in that it strengthens Plaintiff's claim of medical necessity of a cane. Good cause for not submitting the evidence earlier stems from the same reasoning that the evidence is new. Plaintiff had not been prescribed the cane yet. Plaintiff submitted the evidence when Plaintiff appealed the ALJ decision to the Appeals Council, because it was subsequent to the ALJ's initial decision.  In sum, this evidence requires, at a minimum, that the ALJ assess whether or not the use of the cane is medically necessary and to offer sufficient reasons supporting

---

[9] There are three requirements for remand under sentence six. First, the evidence must be new. "Evidence is new . . . if it is not duplicative or cumulative." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (internal citation omitted). Second, the evidence must be material. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. at 96. Third, there must be good cause for failing to submit the evidence earlier. Borders, 777 F.2d at 955. The burden of showing that the requirements of sentence six are met rests with the claimant. See Fagg v. Chater, No. 95-2097, 1997 WL 39146, at *2 (4th Cir. Feb. 3, 1997); Keith v. Astrue, No. 4:11CV00037, 2012 WL 2425658, at *2 (W.D. Va. June 22, 2012).

that determination. Accordingly, sentence six remand for reconsideration of this issue is proper.

The Commissioner has argued that the ALJ's failure to include a limitation involving the cane in the RFC is "harmless because the VE ["vocational expert"] testified that an individual with Plaintiff's RFC could perform a significant number of jobs even if she required use of an assistive device to enter and exit the workplace, and the option to perform the job standing or sitting." (Def.'s Mem. (Doc. 16) at 6-7.) The Commissioner's argument does have some merit and it is a close issue as to whether remand is required. Nevertheless, because this court finds that remand would be required regardless, this court out of an abundance of caution will remand this issue for further consideration by the ALJ.

## 2. **Persistent Nausea**

Plaintiff also contends her persistent nausea should have been considered in formulating the RFC. She testified that she experienced severe nausea, for which she was prescribed medication. (Tr. at 77.) Although the medication allows her to eat, she stated that she continues to be nauseated "24 hours a day." (Id.) As noted by Defendant, a diagnosis alone does not establish disability; rather, a plaintiff must also show a "related functional loss." Gross v. Heckler, 785 F.2d 1163, 1166

(4th Cir. 1986). Here, the record does show that Plaintiff denied she was experiencing nausea in May, July, and August of 2006. Thereafter, however, the medical records note her repeated complaints of continuing nausea. (Tr. at 318; 586—89).

What effect, if any, this condition had on Plaintiff's ability to engage in work activity has not been determined. Defendant claims that the ALJ did consider Plaintiff's nausea when he noted issues regarding Plaintiff's pelvic pain and results of a CT scan of Plaintiff's abdomen. (Def.'s Mem. (Doc. 16) at 7.) However, nowhere in the ALJ's decision is there any discussion of Plaintiff's persistent nausea. It is not clear to this court that a determination regarding nausea is the natural extension of the ALJ's consideration of Plaintiff's pelvic pain and CT results. "We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). When it is unclear from the record whether or not the ALJ's decision is supported by substantial evidence, a district court can remand a case under sentence four of § 405(g). "To remand under . . . sentence four, the district court must either find that the decision is not supported by substantial evidence, or that the Commissioner (or the ALJ) incorrectly applied the law relevant

to the disability claim." <u>Jackson v. Chater</u>, 99 F.3d 1086, 1092 (11th Cir. 1996).

With the present record, this court is unable to ascertain whether Plaintiff's nausea was considered and rejected by the ALJ, or whether the ALJ found that the persistent nausea caused no impact on her ability to work. Because there is no indication of the weight given to Plaintiff's nausea in Defendant's calculation of the RFC, it is unclear whether the finding was supported by substantial evidence.

In sum, Plaintiff has demonstrated that the ALJ's formulation of the RFC may be in error. The ALJ did not consider Plaintiff's prescription for a cane and walker in determining whether Plaintiff's use of a cane was medically necessary and impacted her RFC and the ALJ did not make clear whether or not Plaintiff's persistent nausea was considered at all in determining the RFC. Plaintiff's arguments on these issues merit remand under sentence four and sentence six.

### B. <u>Medical Opinion Evidence</u>

Plaintiff argues that the ALJ erred by failing to consider and to weigh the opinions of the Consultative Examiners ["CE"], Dr. Scott T. Schell and Dr. John A. Surmonte. However, a review of the ALJ's decision clearly indicates that the treatment records of these physicians were reviewed by the ALJ. (Tr. at

48.) Nonetheless, Plaintiff is correct in her argument that these opinions were not given any specific weight by the ALJ. Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). While an ALJ is under no obligation to accept any medical opinion, see Wireman v. Barnhart, Civil Action No. 2:05CV00046, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must explain the weight accorded such opinions. See Social Security Ruling 96-2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) ("SSR 96-2p"); Social Security Ruling 96-6p, Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180 (July 2, 1996) ("SSR 96-6p"). Like with Plaintiff's nausea, it is unclear from the record what weight was given to the opinions of the CEs. The treatment records are mentioned (Tr. at 48), but there is no record of what weight the treating records received in the ALJ's decision. Having failed to do so, sentence four remand is appropriate on this issue.

## C.    __Credibility__

Finally, Plaintiff challenges the ALJ's credibility determination. The ALJ found that Plaintiff was not fully credible, citing her activities of daily living (going with her husband to his job, shopping for groceries, cooking, watching television, and playing word games); her use of a cane, though it was not prescribed; and her failure to comply with prescribed medications. (Tr. at 51.)

In Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), the Fourth Circuit addressed the issue of credibility and outlined a two-part test for evaluating the credibility of a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, and the extent to which they affect his or her ability to work. Craig, 76 F.3d at 595.

The step two inquiry considers "all of the available evidence," including objective medical evidence (i.e., medical

symptoms and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. Id.; see also 20 C.F.R. § 404.1529(c)(3); Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 2996) ("SSR 96-7p"). The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. See Craig, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

Here, the ALJ's credibility determination is not supported by substantial evidence. First, Plaintiff's testimony as to her activities of daily living did not suggest greater functioning than she alleged. The activities cited by the ALJ, including watching television and playing word games, are limited and do not undermine Plaintiff's allegations. Indeed, courts both in

this circuit and elsewhere have recognized that a claimant's ability to perform modest activities of daily living is not a reason to reject claims that impairments cause disabling limitations.[10] Additionally, contrary to the ALJ's reference, Plaintiff stated that she no longer cooked and that her husband did the grocery shopping. (Tr. at 80, 82).

The ALJ also concluded that Plaintiff was not credible, because she was non-compliant with her prescription medication regimen, although the only instances to such in the record include one occasion where Plaintiff alleges she ran out of Vicodin and an instance where Plaintiff was not currently taking antidepressant medication. (Id. at 564, 583.)  The first instance does not demonstrate any willful noncompliance, just a need to refill her prescription, and it is not evident from the latter incident that Plaintiff had a current prescription at

---

[10] See, e.g., Bartley v. Astrue, Civil Action No. 5:08cv089, 2009 WL 3712682, at *9 (W.D. Va. Nov. 3, 2009) (finding "cooking once per day, dusting once per week, shopping with assistance once every two weeks, reading the newspaper, talking on the phone, [and] watching television" does not indicate an ability to work), report and recommendation adopted, 2009 WL 4155920 (W.D. Va. Nov. 24, 2009); Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'") (quoting Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987) (alterations in original)).

that time.  Consequently, this is not enough to discredit
Plaintiff.

Further, in finding Plaintiff less than fully credible, the
ALJ discounted Plaintiff's allegations of severe back pain. In
doing so, he relied on medical records indicating objectively
normal or mild findings. The decision noted that there was
significant improvement in her leg, hip and pelvic pain.
However, these records do not address Plaintiff's ongoing back
pain following her lumbar fusion surgery in July, 2009. In fact,
she was referred to a pain clinic for her continuing pain.

Additionally, the record contains a September, 2010 medical
treatment note from Plaintiff's primary physician who found that
Plaintiff was negative for depression and anxiety. (Tr. at 697—
98.) However, less than one week later, Plaintiff was examined
by her treating psychiatrist who assessed major depression and
PTSD. (Id. at 686.) This illustrates the record does not
indicate credibility issues with Plaintiff's mental health
assertions.

Although an ALJ's credibility determinations are to be
accorded great deference, see Shively v. Heckler, 739 F.2d 987,
989 (4th Cir. 1984), the credibility finding in the present
action is not supported by substantial evidence. The ALJ found
Plaintiff not credible based on supposed inconsistency found

when he compared his assessment of her activities (cooking, shopping, going to work with her husband) in comparison to Plaintiff's asserted pain and inability to function. However, upon closer inspection of the transcript as described in depth above, no such inconsistency seems to actually exist. As such, this issue is also appropriate for reconsideration upon sentence four remand.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED** and that Defendant's Motion for Judgment on the Pleadings (Doc. 15) is **DENIED**. This case is remanded[11] to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings relating to (1) Plaintiff's

---

[11] The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court."  The Fourth Circuit has held that it is appropriate for a federal court to "reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review."

Liles v. Colvin, No. 5:13-CV-749-BO, 2014 WL 6694075, at *3 (E.D.N.C. Nov. 26, 2014) (internal citations omitted).

nausea and its impact on her RFC determination, (2) CE medical opinion evidence, and (3) determination of Plaintiff's credibility in accordance with this Memorandum Opinion and Order. This case is also remanded to the Commissioner of Social Security pursuant to sentence six of 42 U.S.C. § 405(g) to permit the Commissioner to consider the post-hearing evidence regarding Plaintiff's use of a cane. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 24th day of February, 2015.

_____
United States District Judge